with the second case on this morning United States v. Fritz. Mr. Soller, you may proceed. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Carl Soller with the law firm Soller Law International, and I represent the claimant in this matter. This is the type of case that a lawyer invites in law school, but becomes very difficult in the real realm of the law practice and with real people involved. This is a case involving a seizure of objects that are claimed to be in violation of certain statutes and regulations in the United States, as well as a treaty between the United States and Peru. The seizure occurred in August, excuse me, the detention of merchandise entered into the United States in Miami occurred in August of 2010. The notice of seizure was issued in February of 2012. In my view and the view of my clients, the result of this court's decision should be either a remand to Customs and Border Protection to institute the required administrative proceedings, or if not, the case should be dismissed or transferred to the Court of International Trade because the activities of the government in this case constitutes an embargo, which is a case that is in the exclusive jurisdiction of the U.S. Court of International Trade. Let me ask you about the jurisdictional question. If you look at the statute at issue 1581I, it provides that the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers that arise out of any law of the United States providing for embargoes. This suit was brought by the United States, not against the United States. How then could we say in the face of this statutory language that the statute denuded the Court of Jurisdiction? I believe if you look at Section 4 of that statute, it also mandates that the Court of International Trade have jurisdiction related to the enforcement of this embargo. Right, but what about the language that I'm talking about? Any civil action commenced against the United States. Was this a civil action commenced against the United States? No, and it couldn't be. Let me finish. I'm sorry. Or rather, was this a civil action that was initiated or instituted by the United States? It certainly was a civil action that was initiated and instituted by the United States. How do I get around this language? Well, I think the language is clear that it does apply to enforcement of embargoes where there is no case brought against the United States, and the law is very clear that if there is a forfeiture or if there is a seizure, there is only one remedy in court that a claimant has, and that is to wait until the government brings an action for forfeiture against the claimant. So the problem that I have is however we characterize this case, whether we see it as an in rem action against the property or an in personam action against Fritz, the one thing that seems to me to be clear is that the government and not Fritz commenced or initiated this action. I don't disagree with you, but Section 4 remedies that. It talks about the way that this embargo is acted upon, and the enforcement of it obviously is by the government, and therefore the court has exclusive jurisdiction if it's an embargo and if it is enforced by the government. Is an importation prohibition a functional equivalent of an embargo? In this case, yes. Tell me why. Well, the claim in this case is that the objects that were brought into the United States were illegally brought into the United States because they violated the treaty between the United States and Peru, which is an embargo. There are no cases that talk about this type of case, and there are no cases that discuss this type of case, but it is clearly in my view, respectfully, that this agreement between the United States and Peru and the enforcement of this agreement creates an embargo in the traditional sense of the word. So the view that we took from the beginning of this case, which started with the detention of the merchandise in 2010, in addition to we were not even thinking at that time of the jurisdictional issue because we were fighting with the Customs and Border Protection, that you can't do this. The law is very clear, and it's to my view, and I've been practicing in this area since the 1970s, that whenever there's a seizure, there is an administrative remedy, similar to what happens in maritime law, and it's referred to there, that when a seizure is made, there is the right of the claimant or claimants to submit a petition for remission or mitigation of the seizure and preclude a forfeiture. Mr. Stoller, you're talking about your remission remedy under 1618, right? Correct. Okay. There are two theories involved in the two different episodes in this case. One batch of your client's things were dealt with under the CPIA. The other was dealt with under 1595A, right? Correct. There are two proceedings. In the 1595A side of the case, did you get a 1618 notice? I did. You did. And did you file a 1618 petition? We did not. You did not. But we did respond to . . . Just let me . . . I'm sorry. You got the notice, but you decided not to elect to pursue your administrative remedy? In that matter, yes. In that matter. Okay. You did not get a 1618 notice with respect to the CPIA side of the case? Correct. Correct. Is there anything that would have stopped you from filing a 1618 petition in the CPIA case? As a legal matter? That's a yes or a no answer for a question? No. Nothing stopped you. You could have filed it. Legally, yes. So you do not know whether or not it would have been rejected on a legal ground because you never filed it? I know you're wanting a yes or no answer, but if I may get into it, I could explain. I know I've read the correspondence back and forth in your view of the agency, but what I'm trying to decide is precisely what was the exact nature of the error on this administrative side here, and it struck me that it wasn't that you were denied a 1618 hearing because you never asked for one. It was rather that you were denied the notice. It was the denial of the 1618 because we got- The notice that you had the right. We did not get that notice, correct. That's what I'm trying to decide. But the notice and the summary forfeiture was sent at the same time. It was one seizure. No, but what I'm trying to get at is what is the exact error because, for example, if you are saying, well, I didn't get the notice, right, but I didn't bother to file a petition, but I could have filed a petition, and you obviously knew about the opportunity to file a petition because you filed one in the other case, and isn't it a harmless error that you didn't get the notice? No, because they wouldn't allow us to file a petition in- How do I know that because you didn't try to file one? Oh, we did. You did? On numerous occasions, we got at the same time as we got- It's very technical, but I thought, maybe it's my hearing, but I thought when I asked you whether you had filed a petition under 1618 with regard to the CPIA material, you said no, you did not file one. Correct. Right. But we did get a notice. The notice on that was- The notice was that there's been a summary forfeiture. And on the other one, because we got them simultaneously, it would have- The case was very complex as it developed, but we decided if we have to go to court on the one that makes little sense to spend our clients' money to file a petition when we're going to be in court on the same issues on the other major violation. Well, as I read the correspondence, you were facing correspondence from somebody in the proper agency down here in Florida telling you that they didn't think that 1618 procedure applied at all to CPIA. That's what they were telling you. And you were saying to them, you better get somebody down here who knows what they're talking about because you've been at it for many years and you know that it should. But it struck me that you never actually perfected your right to complain about the absence of a 1618 proceeding because you didn't ask for one. We did ask for a 1618, but they issued a summary notice of forfeiture. Show me in the record where you wrote a letter saying, here is my petition under 1618. They would not accept a petition. The notice that we got was a notice of summary forfeiture. Can you show me something in the record that says we will reject a 1618 petition if you file one? It is in the record from the- Not at all right here. I don't have it in front of me, but I know it's in the record. There's a letter from the Port Director and the Head of Fines and Penalties. I will obviously not be able to find it right now, but we were precluded from. Unfortunately, my time is up and I . . . You may finish your answer to Judge Clevenger. I mean, it was clear that we wanted to file a petition, but we were precluded from filing the petition. But you didn't want to file a petition on the 1595. Because we were forced to go into court, it made no sense in terms of judicial and economy for my client to file a petition in one while we're in court fighting the same seizure. Don't you think the court would have stayed its hand pending the administrative action? The court did not. No, but if you had had an administrative petition filed, don't you think the court would have recognized that and stayed its hand? No, I do not. Well, you would have had an argument, certainly you would have. We had a lot of arguments, Your Honor, respectfully. And we made the decision up front when there was no other . . . We've dealt with . . . I've dealt with customs for many years. It's the first time I have ever gotten a notice of summary forfeiture without the ability to file a petition. Thanks, Mr. Soller, and you have reserved your five minutes for rebuttal. Thank you. Good morning, Your Honors. Good morning, Mr. Matsken, and we'll give you a two-minute notice when the amber light goes on. I appreciate that, Your Honor. May it please the Court, Dan Matsken on behalf of the United States, and with me this morning is Assistant U.S. Attorney Karen Moore, who handled the matter below. I'm happy to answer any questions Your Honors have about either the subject matter jurisdiction issue or the administrative issue, but with respect, Your Honors need not delve into the administrative code or subject matter jurisdiction because there are two easy paths to . . . and narrow paths to affirmance in this case without having to address Mr. Combe-Fritz's numerous claims of error on a piecemeal basis. The first is affirmance on the basis of the district court's Rule 37 sanction, striking his claims of interest in this case, and the second is for lack of standing. Mr. Combe-Fritz avoided or actively refused to show up for his deposition. Can I just ask a question? Sure. Before you proceed, you're saying that because of the opportunity for the district court to use Rule 37 sanctions to end the case or because of lack of standing. Lack of standing might be a better point, but why does the opportunity to sanction nullify the administrative claim argument? Well, I think it nullifies all of Mr. Combe-Fritz's claims of error with the possible exception of the subject matter jurisdiction argument because as a result of the sanction, he essentially has no claim. Right. If the district court didn't have the power in the first place to entertain the lawsuit because the sole power to decide the matter reposed in the Court of International Trade, then you'd never get to that issue. So it seems to me the first question is whether or not 1581I deprived the district court of exercising jurisdiction over the case. I don't see how you get around that. Fair enough, Your Honor. Have I missed something there? No. How would a district judge get to this issue of sanctions under Rule 37 or whether it states a claim under 12b-6 if it lacked jurisdiction in the first place to entertain the lawsuit? I think Your Honor is correct. I think subject matter jurisdiction is an issue that Your Honors would need to consider. We're obliged to answer that question first. We can't sidestep it and simply say because the district court properly imposed Rule 37 sanctions. Now, lack of standing would be another question. If it wasn't justiciable, that might be another way to come at that. Right. But I'm not sure that that's right either. So why don't you start with why the district court properly exercised jurisdiction over the matter? Sure. As Your Honor pointed out earlier, this simply was not a claim brought against the United States. It was a claim brought by the United States. That's point number one. Point number two, this was not an embargo, and I would refer the court to the Supreme Court's decision in the Kmart case, which we rely upon in our brief. And in that case, the Supreme Court essentially makes a distinction between qualitative and quantitative restrictions. Embargoes in the traditional sense are quantitative restrictions to zero on the importation of goods or merchandise. Here what we have is a qualitative restriction, not a quantitative restriction. Section 2606 of the CPIA tells us under what circumstances, you know, cultural patrimony can be lawfully brought into this country. So this is a situation where Congress said, you know, under no circumstances can cultural property from a given country be brought in. Congress said, you know, under certain circumstances it can be brought in, but under other circumstances it cannot be brought in. And so this is not a quantitative restriction to zero. It is a purely, it's an import restriction, not an embargo. And, in fact, Congress titles Section 2606 not embargo, but import restriction. And in that section it explains, again, you know, under what circumstances merchandise can and can't be brought into the country. So we don't have an embargo here. I'm happy to move on to whatever, you know, whichever other issue Your Honors would prefer to hear next. I, you know, again . . . On the administrative issue, sir, is it true that throughout the entire country there is no 1618 remedy provided for CPIA cases? I shouldn't speak authoritatively as to what the case is elsewhere in the country, but to the best of my knowledge that is the case. Did you inquire? I mean, both in front of the magistrate judge and in the briefing here, we were educated on the query as to whether or not this was solely a South Florida rule or whether it was nationwide. I would assume you've gone back and asked headquarters what the answer to that question is. To the best of my knowledge, it is nationwide, not just South Florida. And is it so that there is just absolutely no opportunity, if one were to file a 1618 petition in a CPIA case, it would be rejected? Is that correct? That is my understanding. It's CBP's position that some report feature applies to CPIA cases. And why is that so? What statutory authority do you have for that? Because 1618 provides broad covers with regard to any circumstance in which there has been a forfeiture. So this analysis comes down to the interplay between two statutes and one regulation. So Section 2612 allows for the promulgation of rules with respect to the CPIA. Section 2609A says that the general customs laws apply except where the rules are inconsistent. And here, under 12.104, the regulations provide for something that is inconsistent, which is the summary forfeiture procedure here. But there is summary forfeiture elsewhere, isn't there, in the system? And other summary forfeiture under other statutes will provide for 1618 relief. The fact that you've actually begun summary proceedings outside of 1618. I'm not sure I understand the question. I'm sorry. I'm having trouble understanding how it is that through a regulation you can simply say that 1618 remedy doesn't apply because we don't want to make it apply. Well, I mean, Congress, you know, invested rulemaking authority and pursuant to that rulemaking authority, you know, Section 12.104 was promulgated. You can decide that 1618 doesn't apply, which it would otherwise apply absent the regulation. Right, and Congress contemplated this in Section 2609A where it said that, you know, where it left open the possibility that rules or regulations that are inconsistent with general customs laws would govern. I mean, it didn't need to do that if it didn't want to leave that opening out there. And so, you know, this is something that clearly would have been within the contemplation of Congress at the time. What's the rationale of the agency for granting a 1618 proceeding in a 1595 case but not in a CPIA? What's the rationale for excluding the administrative remedy? I can't say. I mean, I'm not, I can't say. I've extensively studied the legislative history to see that. Well, I have. I've studied the regulation and nowhere is there any mention of whether or not there'd be a 1618 exclusion. They simply were providing for summary forfeiture, which you can have in other cases as well. Right. But look, I mean, I can't speak to the rationale per se as to why it would be the case for one statute versus another, but, you know, the rules say what they say. They were promulgated pursuant to Section 2612. Again, Section 2609 lays out the possibility that there would be rules that are inconsistent with general customs laws, and that's what we have here. Well, the inconsistency was created by regulation after the enactment of the statute. The inconsistency wasn't as a result of preexisting law that was there. It seems strange to you that the agency can, by regulation, deny an administrative remedy that is available in all other cases involving the seizure and forfeiture of goods? Well, look, I mean, getting back to what you were saying before, nothing was filed. Mr. Combe-Fritz could have filed a protest, you know, to the extent that he thought that notice was defective. You know, the summary forfeiture provisions gave him 90 days to come forward with evidence that the artifacts in this case were lawfully imported to come forward with a certificate from the government of Peru or with some other evidence, and he didn't do that. So it isn't as if, you know, summary forfeiture somehow, you know, completely deprived him of due process or, you know, precluded him in any way from challenging this at the initial stage before it got to court. But again, I mean, Your Honors need not reach this issue because, first of all, the district court acted well within its broad discretion in imposing sanctions on Mr. Combe-Fritz for his deliberate discovery misconduct. And that, in essence, wipes out all of the rulings that the district court made on the way to the end of the game, right? Exactly, Your Honor. You know, time and time again, Mr. Combe-Fritz flouted his obligation to attend his deposition. Early on in the case, a magistrate judge entered an order requiring that the deposition go forward at this time. Needless to say, that never happened. The government tried time and time again to set the deposition. Mr. Combe-Fritz sought a protective order on the basis of some nonexistent criminal investigation against him. In spite of characterizing the evidence as at best thin, the magistrate judge granted him an extraordinarily broad protective order  produced in the case couldn't be used in any other case. And notwithstanding that sweeping protection, Mr. Combe-Fritz still refused to show up for his deposition. Finally, at the eve of trial, the district court issued an order to show cause why the case shouldn't be dismissed, and this was after the magistrate judge had just excluded him from testifying at trial. And after that, the district court, instead of striking his claim . . . Oh, I'm sorry, what's your question? Go ahead. Oh, I'm sorry. Instead of striking his claim, the district court gave him one last chance to turn up for his deposition, and he didn't. And so under these circumstances, the district court clearly acted well within its broad discretion under Rule 37 in imposing sanctions by striking his claims of interest. And this court need go no further. We would submit. I don't think we have any further questions. Okay. Thank you very much. We would respectfully request that Your Honors affirm the district court. Thank you, sir. Thank you. I listened carefully to the government's argument, and one issue that the court is interested in is that summary forfeiture. Summary forfeiture provision, although we do not believe it is exclusive, it can't be exclusive according to the statute and the regulations under the CPIA, can be read together with the regulations because there is summary forfeiture in certain types of cases where the choice is given to the defendant or the claimant to waive the ability to file a petition and ask the government to seek summary forfeiture, and it's a value issue. The other issue which I just want to point out, which is part of the due process argument here, is that our client did not speak English, and there was no formal or informal notice of detention issued. Our client was not informed. I don't even know because there was a preclusion of opening up discovery. I don't even know whether the customs official who made the initial detention spoke Spanish. So there was no notice to the claimant that he had 90 days to prove that there was no violation of the import laws of the United States. And I'd also like to point out one other thing, which was a quote from Magistrate Goodman in the one live submission and oral argument that we had below when he was talking about the issue of a criminal investigation, which was the reason, and I won't go into it because I only have two and a half minutes, that our client would not come forward. And the judge said straight out that as a, this is quoting Magistrate Judge Goodman, as a New Mexico magistrate judge addressing a motion to compel production of documents from a non-party, in this case put it recently, the government suspects that Comforts and his father were part of an illegal operation to smuggle ancient artifacts into the United States. Moreover, federal bureau investigation special agents have interviewed fact witnesses in this civil forfeiture case and government counsel expressly advised claimant's counsel that his client needs to be advised of the Fifth Amendment rights. We believe that the judge abused her discretion in this case by not extending the discovery procedures and in what we believe misinterpreting all the facts that were out there relating to a criminal case and as is normal for Customs and Border Protection, not followed in this case because of the summary forfeiture, when there is a concomitant criminal and civil investigation, Customs regularly puts aside the requirement to go forward with the civil case until the criminal case is ended. There are no other questions. I thank you for the time. Thank you, counsel. Thank you both. This court will be in recess for 15 minutes.